**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**John DOE, Defendant–Appellant.**

**No. 88–1702.**

United States Court of Appeals,
Fifth Circuit.

Aug. 28, 1989.

Rehearing and Rehearing En Banc Denied Oct. 17, 1989.

Charles Louis Roberts, El Paso, Tex., for defendant-appellant.

LeRoy Morgan Jahn, San Antonio, Tex., for plaintiff-appellee.

Before GEE, JONES, Circuit Judges, and HUNTER, District Judge: *

fense level, however, the range is only 43–51 months.

* District Judge of the Western District of Louisiana, sitting by designation.

GEE, Circuit Judge:

This appeal addresses a single issue: the effect of a one-day delinquency in proceedings governed by the federal juvenile speedy trial act.

On July 19, 1988, federal authorities arrested John Doe (Doe) on the bridge spanning the Rio Grande River between El Paso, Texas, and Juarez, Mexico. Doe was charged with possession of heroin with intent to distribute. Immediately after the arrest, the arresting officers began the immigration procedures necessary to bring Doe into the United States. The arresting officers then transferred Doe to the regional Drug Enforcement Agency (DEA) office, where officials determined that he was a juvenile.[1] Upon discovering that Doe was a juvenile, the federal officials complied with 18 U.S.C. Section 5032 and transferred Doe to state authorities, tendering jurisdiction to them. The state declined to prosecute Doe, thus giving federal authorities jurisdiction to do so. On July 20, the state returned Doe to federal custody and moved for a detention order. Also on the 20th, the magistrate held a detention hearing and, on the following day, entered a detention order.

On August 19, 1988, Doe was tried and convicted as a delinquent. Before the trial began, Doe moved to dismiss the indictment on the ground that the 30–day speedy trial period for federal juvenile defendants had expired on August 18. The court denied the motion, reasoning that the detention order was filed on July 20 and, thus, the 30–day period did not expire until August 19. Doe appeals.

Although the district court incorrectly interpreted the juvenile speedy trial provision, we need not reverse. If a federal juvenile is "in detention pending trial," his trial must begin 30 days from the date detention began; if the trial begins after the 30–day period expires, the court must dismiss the information. 18 U.S.C. Section 5036. Under the District court's interpretation of Section 5036, a juvenile is not "in detention until a detention order is filed.

The district court's understanding of Section 5036 is, however, inconsistent with our interpretation of that provision and with the ordinary meaning of the term detention. Moreover, the district court's holding requires us to rewrite Section 5036, adding to the statutory language. Despite the court's error, however, we need not reverse. Section 5036 permits delays that are in the interest of justice. In this case, the federal officials spent one day completing the processes necessary both to bring Doe into the United States and to exercise jurisdiction over a juvenile defendant. This one-day delay, occasioned by a good-faith and expeditious compliance with the federal statutory requirements for prosecuting Doe, is a delay that we countenance in the interest of justice.

### *"Detention"*

■ The district court erred when it concluded that the juvenile speedy trial period began to run when the detention order was filed, not when Doe was taken into physically restrictive custody. Section 5036 provides:

> [i]f an alleged delinquent who is in detention pending trial is not brought to trial within thirty days from the date upon which such detention was begun, the information shall be dismissed

> . . . . .

Section 5036. The definition of the term "detention" is, as we noted in *United States v. Cuomo*, unclear. 525 F.2d 1285, 1290 (5th Cir.1976). In our attempt to give meaning to the term, we explained that "in the understanding of juvenile court specialists and the language of statutes, model codes, and judicial opinions, 'detention' almost invariably is used as a term of art to mean physically restrictive custody, confinement within a specific institution." *Id.* at 1291 (footnotes omitted). Thus, in *Cuomo*, the 30–day period did not run while the defendant was out on restrictive bail, but not in physically restrictive custody. *Id.* at 1292. Consistent with our analysis in *Cuomo*, we determine whether a juvenile is in "detention" by asking whether he is in physically restrictive custody—not whether the prosecutor has complied with the proce-

---

1. Doe was 16 years old at the time of his arrest.

dural requirement of filing a detention order.[2]

Furthermore, the *Cuomo* court relied, in part, on the National Council of Crime and Delinquency's definition of detention: " 'Detention is the temporary care of children in physically restricted facilities pending court disposition or transfer to another jurisdiction or agency ...' " *Id.* at 1291 n. 12 (quoting Hammergran, *The Role of Juvenile Detention in a Changing Juvenile Justice System,* 24 Juvenile Justice No. 3, at 46 (1973)). Under this definition of detention, Doe was "in detention" from the moment he was arrested and taken into physically restrictive custody. While the arresting officers were completing the immigration process, Doe was in physically restrictive custody pending his transfer to the regional DEA office. Next, DEA officials transferred Doe to state authorities, where Doe remained in physically restrictive custody awaiting the state's decision whether to prosecute him. After the state declined to exert jurisdiction, it returned Doe to the federal authorities, who held him in physically restrictive custody until trial. Thus, according to our understanding of "detention," Doe was in detention from the moment he was first placed in physically restrictive custody.

In addition to conflicting with our understanding of detention in *Cuomo,* the district court's interpretation conflicts with the ordinary meaning of the term detention. In ordinary usage, the word detention means "(1) the act or fact of detaining: (a) holding in custody ..." Webster's Third New International Dictionary 616. "Detain," as it commonly is used, means "to hold or keep in or as if in custody." *Id.* As the term detention usually is used, a person is in detention when he is in custody, and his period of detention begins when he is taken into custody. Under the dis-

trict court's understanding of the word, however, a person is not "in detention" until the person detaining him has filed the necessary papers. The district court's interpretation is at odds both with the usual meaning and with our judicial understanding of the term detention. We thus decline to adopt the district court's reasoning.

Finally, we cannot accept the district court's interpretation, as it requires us to add to the language of Section 5036. Section 5036 requires the court to dismiss an information if "an alleged delinquent who is in detention is not brought to trial within 30 days from the date *upon which such detention was begun ....*" Section 5036 (emphasis added). Although the statute makes no reference to whether the prosecutor has filed a detention order, the district court concluded that the 30-day period is not triggered until the prosecutor has filed one. To reach the district court's conclusion, we would have to add to the statutory language, so that Section 5036 would read: "if an alleged delinquent who is in detention pending trial is not brought to trial within 30 days from the date *upon which such detention was begun and from the date upon which such detention order was filed,* the information shall be dismissed...." If Congress had wanted the 30-day period to run from the date of filing a detention order, it could have used language that mentioned the filing. Congress chose not to refer to (or neglected to consider) the filing of the detention order and we will not amend Section 5036 to include language that does so.[3]

### The Interest of Justice

■ Although the district court erred in interpreting Section 5036, we need not reverse. Measuring the 30-day period from the date upon which Doe was in physically

---

**2.** Indeed, to define "in detention" with reference to whether a detention order was filed would be to place form above substance. A juvenile can be, as Doe was, in physically restrictive custody long before the prosecutor files a detention order.

**3.** Holding that the 30-day period begins when the juvenile is taken into custody puts us at odds with the Ninth Circuit. We decline to follow the Ninth Circuit's interpretation of Section

5036, however, because *its* interpretation is inconsistent with our analysis in *Cuomo* and with the language of Section 5036. In *United States v. Andy,* the Ninth Circuit used 18 U.S.C. Section 5032 to set the date upon which Section 5036's 30-day period begins to run. 549 F.2d 1281 (9th Cir.1977). Section 5032 requires, as a prerequisite to federal prosecution of a juvenile, that the Attorney General certify that the state court cannot or will not exert jurisdiction over the

restrictive custody, we conclude that the 30–day period expired on August 18—one day before Doe's trial began. This one-day delay does not, however, automatically warrant a reversal. Section 5036 requires a dismissal "unless the Attorney General shows that additional delay ... would be in the interest of justice in the particular case." A federal delinquency proceeding cannot begin until the Attorney General, after investigation, certifies to the district court that (1) the state juvenile court does not have jurisdiction or will not exercise jurisdiction over the juvenile or (2) the state does not have programs or services for juveniles. 18 U.S.C. Section 5032. In other words, federal prosecutors must tender the case to state prosecutors before exerting federal jurisdiction. After placing Doe in custody, the federal authorities spent one day arranging to bring Doe into the United States and tendering the case to the state. Immediately after the state declined to exercise jurisdiction, the prosecutors started the federal procedural ball rolling. This one-day delay, during which federal prosecutors were complying with their statutory duties, is a delay that we determine to countenance in the interest of justice.

AFFIRMED.

juvenile. According to the *Andy* court, the 30–day period begins to run on

(1) the date that the Attorney General certifies, or in the exercise of reasonable diligence could have certified, to the conditions stated in Section 5032, or (2) the date upon which the Government formally assumes jurisdiction over the juvenile, whichever event earlier occurs.

*Id.* at 1283. We decline to follow the Ninth Circuit for two reasons.

First, the Ninth Circuit's interpretation is inconsistent with our holding and analysis in *Cuomo.* In *Cuomo,* we held that detention begins when the juvenile is in custody, reaching our conclusion without reference to whether the Attorney General has filed the appropriate papers. Moreover, we arrived at our interpretation by searching for the correct meaning of the words of Section 5036. Section 5036 commands that the 30–day period begins when detention begins; defining detention as physical custody, we concluded that detention begins when physical custody begins. The Ninth Circuit, in contrast, defines detention not by reference to the meaning of the word, but by reference to the procedural requirements for prosecuting a juvenile.

Second, the *Andy* court effectively amended the language of Section 5036. Under the *Andy* court's approach, the 30–day period does not begin to run from the time detention has "begun," as the statute requires. Rather, the 30–day period begins to run when the Attorney General files a certification. Taking physical custody of a juvenile and filing a certification are two distinct and separate acts. The Ninth Circuit erased from Section 5036 the language that measures the 30–day period from the "date upon which detention was begun" and substituted in its place language that measures the 30–day period from the date of certification. We decline to follow the Ninth Circuit's efforts to rewrite Section 5036.