10 F.3d 809
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
RODNEY S., Defendant-Appellant.
 No. 91-10375.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted May 10, 1993.
Nov. 15, 1993.
 
 Before: POOLE, BOOCHEVER and FERNANDEZ, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 A special speedy trial provision prohibits detaining a juvenile defendant more than 30 days pending trial. The defendant in this case, a juvenile, argues his trial was delayed more than 30 days. He also argues that the evidence adduced at trial was legally insufficient to support his conviction. We now vacate the district court's speedy trial ruling and remand for further fact-finding.
 
 I.
 
 3
 Appellant Rodney S.[1] stabbed and seriously wounded a fellow resident of the Tohono O'Odham Indian Reservation in Arizona. The stabbing occurred on May 5, 1991. Rodney claimed the stabbing was in self-defense.
 
 
 4
 The next day, May 6, 1991, FBI agent James Ader, who was assigned to the reservation, was called in on the case. After some investigation, Agent Ader contacted the local U.S. Attorney's office. He was told the United States would be filing a criminal information in the matter. This occurred on May 7, 1991.
 
 
 5
 On May 13, 1991, the government filed its "certification" in the case, a necessary document in juvenile delinquency cases stating that the case is appropriate for federal prosecution. A June 7 trial date was set, but was later continued to June 13 at the government's request and with the approval of Rodney's counsel. On June 12, Rodney's counsel moved for dismissal on speedy trial grounds. The trial judge denied the motion at a hearing the next day, and, after a trial to the court, found Rodney guilty.
 
 
 6
 Rodney was sentenced to 37 months' imprisonment on July 15, 1991. He timely brought this appeal.
 
 II.
 
 7
 Concerning speedy trial issues, we review the district court's factual findings for clear error and its legal conclusions de novo. United States v. Nash, 946 F.2d 679, 680 (9th Cir.1991).
 
 
 8
 Evidence is sufficient to support a conviction if, "reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." United States v. Bishop, 959 F.2d 820, 829 (9th Cir.1992) (internal quotation marks omitted).
 
 III.
 
 9
 Rodney claims that his trial was delayed more than thirty days, in violation of the speedy trial provisions of the Federal Juvenile Delinquency Act, 18 U.S.C. Secs. 5031-5042.
 
 That Act provides:
 
 10
 If an alleged delinquent who is in detention pending trial is not brought to trial within thirty days from the date upon which such detention was begun, the information shall be dismissed....
 
 
 11
 18 U.S.C. Sec. 5036. Excepted from this rule are delays "consented to by the juvenile and his counsel," and those the Attorney General can demonstrate were "in the interests of justice in the particular case." Id. However, "[d]elays attributable solely to court calendar congestion may not be considered in the interest of justice." Id.
 
 
 12
 The critical question in this appeal is when Rodney's 30-day clock began to run. Relying on United States v. Andy, 549 F.2d 1281, 1283 (9th Cir.1977), Rodney argues that the 30-day period began no later than
 
 
 13
 the date that the Attorney General certifies, or in the exercise of reasonable diligence, could have certified, to the conditions stated in Section 5032.
 
 
 14
 Id.
 
 
 15
 "Section 5032" is a provision of the Juvenile Delinquency Act requiring the government to certify that a juvenile case is appropriate for federal prosecution. See 18 U.S.C. Sec. 5032. The certificate in this case, a three-paragraph pleading, was filed May 13, 1991.
 
 
 16
 Rodney, however, contends that the pleading was inexcusably delayed, and "in the exercise of reasonable diligence, could have been" filed several days earlier. See Andy, 549 F.2d at 1283. A certification date earlier than May 13 would mean that more than 30-days had elapsed before the June 13 trial, and that under Andy, Rodney's conviction must be reversed.
 
 
 17
 The government vigorously contends that the rule announced in Andy is unsound. It claims Andy 's reliance on the date of certification is inconsistent with the plain language of the statute, which makes the 30-day period begin on "the date upon which [ ] detention was begun." 18 U.S.C. Sec. 5036 (emphasis added). The government points to decisions in several other circuits which have so concluded. See United States v. Doe, 882 F.2d 926, 927-928 & n. 3 (5th Cir.1989) (discussing and rejecting the holding of Andy ); United States v. Sechrist, 640 F.2d 81, 83-85 (7th Cir.1981) (same); United States v. Doe, 642 F.2d 1206, 1207-08 (10th Cir.) (same), cert. denied, 454 U.S. 817 (1981).
 
 
 18
 The district court also believed Andy was incorrect, and, for at least part of its ruling, expressly ignored it. RT 6/13/91 ("RT") at 3-4, 12-14 (ruling that, notwithstanding Andy, the beginning of custody would be used for the speedy trial calculation, because "it doesn't make any sense to me that the date of certification, does not make any sense to have the date of certification trigger the Speedy Trial Act").
 
 
 19
 Whatever the law may be elsewhere, however, Andy remains the law of this Circuit. We are not free to accept the government's invitation to overturn it. Morton v. De Oliveira, 984 F.2d 289, 292 (9th Cir.1993).
 
 
 20
 Accordingly, we must determine at what point in time the U.S. Attorney's office, "in the exercise of reasonable diligence, could have certified" this case for federal prosecution. The district court did not make an express finding on this question.[2]
 
 
 21
 The question turns out to be very close. The FBI was notified about the case on May 6, 1991, just one day after the crime. The Assistant United States Attorney assigned to the case, John Leader, was advised of the incident the next day, on May 7, 1991. On that same day, Leader told the FBI that a federal information would be prepared, charging Rodney and his codefendant with juvenile delinquency. Presumably, the process of certification could have been begun at that time. But the details of that process are unclear, and are not in the record.
 
 
 22
 The government responds that all of the federal judges were out of town during the latter part of the week of May 6, 1991, and that FBI agent Ader, the case agent, "suffered a serious back injury and was hospitalized on May 8, 1991, and was unable to oversee the case." How much of a role Agent Ader needed to play in the certification process, however, is an unanswered question, and is not in the record. The certification itself does not mention any details of the crime stemming from Agent Ader's investigation.
 
 
 23
 There are other ambiguities. Rodney's attorney apparently consented to a trial continuance requested by the government, which moved the trial date from June 7, 1991 to June 13, 1991.[3] Under section 5036, continuances consented to by "the juvenile and his counsel" are excluded from the speedy trial period. 18 U.S.C. Sec. 5036. But it is unclear whether Rodney himself ever consented to this delay. All the government's motion says is that Rodney's attorney consented.
 
 
 24
 Assuming Rodney did consent to the June 7 to June 13 delay, six days would be added to his speedy trial period. Subtracting 36 days, then, rather than 30 days from the date of the June 13 trial, one realizes that for Rodney to prevail, he must show that a diligently-prepared certification would have been filed on or before May 8, 1991.
 
 
 25
 Whether a diligent U.S. attorney would have filed a certification by then is a difficult question to answer without further help from the record. We see nothing to indicate what must happen before a certification may be issued, and little to tell us why one was not issued earlier than May 13 in this case. A brief the government filed with the district court states that a certification was signed as early as May 8. CR 16 at 2. We cannot tell why the certification was not filed with the court at that time. There was the out-of-town court conference that week, but nothing to explain why that meant a certification could not be filed. In short, we are at a loss to evaluate the speedy trial issues without further information in the record. The case must be remanded for further findings on this issue.
 
 IV.
 
 26
 The district court also entered an alternative finding that the "interest of justice" exception to the speedy trial statute applied. The court stated that its basis for the finding was "the case agent's injury, the lack of judges in the District or in Tucson and so forth."
 
 
 27
 We do not think an out-of-town judicial conference is a legitimate "interest of justice" exception under the Act. Section 5036 expressly excludes from the interest-of-justice exception delays due to "court calendar congestion." It seems to us immaterial whether the cause of the congestion is a backlog of cases or an out-of-town judicial conference. A delay due to an unrelated encumbrance on judges' time is not "in the interest of justice" for speedy trial purposes.
 
 
 28
 As to the injured agent, again the record is inconclusive. There is no evidence that would enable the district court to decide whether the government needed further information from Agent Ader after his May 7 injury in order to complete the certification. As we mentioned earlier, we cannot tell what information is required for a certification to be completed.
 
 
 29
 Accordingly, if on remand it again becomes necessary for the district court to consider whether the interests of justice warranted a delay, the court should first make further findings on whether and how Agent Ader's injuries affected the certification process.
 
 V.
 
 30
 Finally, Rodney argues that the evidence was insufficient to convict him. These arguments are meritless. Each goes only to the weight of the evidence, not its sufficiency. The fact that a witness changed his testimony or that a witness's memory is blurry does not establish that no rational trier of fact could have believed the government's case. Rodney's insufficiency of the evidence claim is rejected.
 
 
 31
 The district court's speedy trial ruling is VACATED. The case is remanded for further findings on the speedy trial question consistent with this opinion.
 
 
 32
 If the district court concludes a speedy trial violation has occurred it shall vacate its judgment of conviction and dismiss the information. If the district court, after making the additional findings specified in this disposition, determines that there was no speedy trial violation, its judgment of conviction will remain undisturbed as this court REJECTS the appellant's insufficiency of the evidence claim.
 
 
 33
 IT IS SO ORDERED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 The appellant is a juvenile. His last name has been abbreviated pursuant to 18 U.S.C. 5038(e)
 
 
 [2]
 We reject the government's contention that the district court's finding that the "interests of justice" justified a delay amounted to a finding that the government could not, in the exercise of reasonable diligence, have completed its certification sooner
 
 
 [3]
 At the speedy trial hearing, defense counsel referred to his agreement to exclude 4 days from the speedy trial period, not the 6 days that fell between June 7 and June 13. RT at 8. Counsel apparently failed to count the weekend which fell between the June 7 trial date (a Friday), and the newly-scheduled date of June 13. Speedy trial calculations, however, include weekends