IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

No. 94-40227
Summary Calendar

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

VERSUS

THREE MALE JUVENILES,

Defendants-Appellants.

Appeal from the United States District Court
for the Eastern District of Texas

(March 29, 1995)

BEFORE JONES, BARKSDALE and BENAVIDES, Circuit Judges.

BENAVIDES, Circuit Judge:

This is an interlocutory appeal[1] of a district court order transferring three male juvenile defendants ("appellants") for prosecution as adults pursuant to Title 18 U.S.C.A. § 5032. Rejecting appellants' attack on the interlocutory order, we affirm.

---

[1]This court has jurisdiction to review an order transferring juveniles for prosecution as adults. See United States v. Bilbo, 19 F.3d 912.

FACTS AND PROCEDURAL HISTORY

On January 14, 1994, this proceeding in the federal district court was initiated when the government filed a three-count complaint charging each of the three juvenile appellants with the following offenses: conspiracy to unlawfully take a motor vehicle while possessing a firearm in violation of 18 U.S.C. § 371; unlawful taking of a motor vehicle while possessing a firearm in violation of 18 U.S.C. § 2111; and, possession of a firearm during a crime of violence in violation of 18 U.S.C. §§ 924(c)(1) and 2.

The underlying facts as alleged in the criminal complaint are as follows. Juvenile #1, 17 years of age, Juvenile #2, 16, and Juvenile #3, 15, decided to obtain a vehicle by force in Marshall, Harrison County, Texas, drive it to California, and then liquidate the vehicle to obtain funds to purchase crack cocaine, which they then intended to sell for a profit. Agreeing on a victim, the three individuals duped Susan Vanorden into giving them a ride in her car on the evening of November 25, 1993. Then, using a .22 caliber rifle, which Juvenile #3 had previously stolen from his father, the three individuals forced Vanorden from behind the wheel, took her to a secluded area, shot her once in the arm, and, when the rifle misfired, beat her to death with it.

The record further reveals that the juveniles then picked up two acquaintances and, while headed to California after disposing of the rifle, were taken into custody in a nearby county in Texas

on November 26, 1993, following a police chase which resulted in the crash of Vanorden's car.

The juveniles were taken into federal custody on January 18, 1994, and on their initial appearance that same date the government filed as to each juvenile certifications to proceed under the Juvenile Justice and Delinquency Act ("Act"), 18 U.S.C. § 5031 et seq. Additionally, the government filed its "Motion to Transfer Proceedings Against Juveniles to Adult Criminal Prosecution", pursuant to § 5032 of the Act on said date.

Upon the filing of the government's transfer notice, the district court ordered each juvenile to undergo a psychiatric examination regarding their intellectual development and psychological maturity pursuant to § 5032 of the Act. After the district court received the psychological evaluations of each juvenile and conducted detention and probable cause hearings, all three juveniles moved to dismiss the charges for violations of their rights to a speedy trial under the Act, and to strike the certification. After a three-day hearing that began on February 17, 1994, the district court rejected the juveniles' attack on the certification and granted the government's motion to transfer the proceedings of the juveniles for prosecution as adults. Additionally, the motions for dismissal on the speedy trial provision (§ 5036) of the Act were denied. Each of the appellants makes similar attacks on the transfer order which we address below.

THE DISTRICT COURT'S FINDINGS
AND THE EVIDENCE IN SUPPORT THEREOF

The decision whether to transfer a juvenile for adult prosecution pursuant to 18 U.S.C. § 5032 is committed to the sound discretion of the trial court, "provided the court employs and makes findings as to the six criteria outlined in", § 5032. Bilbo, 19 F.3d at 915. "The guiding principle in transfer proceedings is whether a transfer would be in the interest of justice." Id.

Section 5032 requires a district court to consider the following factors: (1) the juvenile's age and social background; (2) the nature of the alleged offense; (3) the extent and nature of the juvenile's prior delinquency record; (4) the juvenile's present intellectual development and psychological maturity; (5) the nature of past treatment efforts and the juvenile's response to such efforts; and (6) the availability of programs designed to treat the juvenile's behavioral problems. Bilbo 19 F.3d 915.

While all six factors must be considered, the court "is certainly not required to weigh all statutory factors equally." U.S. v. Doe, 871 F.2d 1248, 1254-55 (5th Cir.), cert.denied, 493 U.S. 917 (1989). In conducting the six-factor analysis, the district court acts as the finder of fact, and any credibility choices made regarding factual findings "cannot be overturned unless clearly erroneous." Id. at 1255.

All three appellants contend that the district court failed to make specific findings regarding whether each factor weighed for or against transfer, or was neutral. Each appellant also alleges that

the evidence was insufficient to support the district court's findings regarding each factor.

The district court made specific findings of fact and conclusions of law with regard to each appellant and each of the six factors. The appellants' arguments that the district court was required to state specifically whether each factor weighed for or against a particular appellant or was neutral is without support. The provisions of the Juvenile Justice Delinquency Act do not require such statement, nor are we directed to any federal court decision that requires such statements by the district court. Such specificity is not required.

The appellants' arguments that the district court's factual findings are without an evidentiary basis is also unavailing. The district court conducted a transfer hearing spanning three days which is replete with evidence supporting the trial court's findings.

Dr. William Gold, a psychiatrist, conducted court-ordered psychological examinations of Juveniles #2 and #3, but was unable to examine Juvenile #1 due to his attorney's objection. Dr. Gold testified that Juvenile #2 was of low-average intelligence and had psychological maturity compatible with his age in addition to "street smarts". Likewise, Dr. Gold testified that Juvenile #3 was of average intelligence, possessed psychological maturity compatible with his age and was "street smart". Although he did not conduct any psychiatric testing on Juvenile #1, he testified that such juvenile was "within normal range" of intellectual

-5-

development "appropriate for [Juvenile #1's] age level". Dr. Gold further testified that all three juveniles were beyond rehabilitative efforts. His testimony corresponds with the district court's factual findings.

The district court also heard testimony from all three juveniles' school officials. Juvenile #3's assistant principal, James Willey, testified that Juvenile #3 was expelled from high school two weeks before the car-jacking/murder and, prior to that, had multiple violations of school rules, excessive tardiness and absences, and numerous incidents of violence including fighting, possession of brass knuckles, and kicking a student's teeth out.

Willey also testified regarding Juvenile #2, that his school disciplinary problems began in the seventh grade. Juvenile #2 had a "long history of problems," including detention, 22 unexcused tardies, fighting, assaultive behavior, and trespass. Willey testified that he felt that neither Juvenile #3's nor Juvenile #2's parents, nor the school, could control them.

Juvenile #1's high school principal, Luther Cockerham, testified that Juvenile #1 was "a very mature individual" and that he had "above average" intelligence. He also testified that he was aware of an incident in which Juvenile #1 assaulted the murder victim, Vanorden, during school. Cockerham also testified regarding Juvenile #1's student records, and, also with respect to such juvenile, about a number of incidents of scuffling, assaults, fighting, threatening to kill a teacher, and carrying a knife at school. Juvenile #1 was ultimately expelled for the remainder of

the school year.  The district court's fact findings regarding all three appellants' school-related activities and behavior are supported by Cockerham's and Willey's testimony.

The district court also heard testimony from juvenile authorities regarding all three appellants.  Carl Long testified that Juvenile #1 had three previous criminal adjudications, including assault and terroristic threat, had been convicted of violating juvenile probation and the unlawful use of a motor vehicle, and had been charged with criminal trespass, evading arrest, and burglary of a habitation.  Long testified that probation had no effect on Juvenile #1, and that he had not seen "one thing" that would indicate that Juvenile #1 was capable of being rehabilitated.  The record further reveals Juvenile #1's two-year stay in a residential facility for his misconduct had failed to rehabilitate him.

Long also testified that Juvenile #3 had a prior juvenile record, including an arrest and conviction for conspiracy to deliver a controlled substance, was charged twice for evading arrests, had three curfew violations, four probation violations, and was charged with indecent exposure.  Juvenile #3 was also a runaway, and had stolen his father's gun which was used in the underlying offense.

Martha Whisenhunt, a juvenile probation officer for Harrison County, Texas, testified that Juvenile #2 had been placed on formal and informal probation which he had violated numerous times, he was suspected of a number of burglaries, had resisted arrest, and had

been arrested for theft. Whisenhunt also testified that she was aware of an incident in which Juveniles #2 and #3 threatened to kill a number of staff members at the juvenile detention center.

Long and Whisenhunt's testimony supports the district court's factual findings regarding the appellants' prior delinquency records and past treatment efforts.

All three appellants also argue that the district court incorrectly determined they could not be rehabilitated. Such a contention misapprehends the nature of the transfer proceeding and ignores their individual responses to probation. "[W]hile rehabilitation is a priority, the courts are not required to apply the juvenile justice system to a juvenile's diagnosed intellectual or behavioral problems when it would likely prove to be nothing more than a futile gesture." Bilbo, 19 F.3d at 916. The appellants' performances while on probation demonstrate that their potential for rehabilitation in the juvenile system is poor. Because the district court properly applied, and made findings with respect to, the six-factor test and because its factual findings are supported by the record, the district court did not err in concluding that each of the three appellants should be transferred for adult prosecution. Given the violent and serious nature of the offenses and the evidence and findings regarding the other factors such as the unsuccessful past treatment efforts, the district court could hardly help but order transfer. Certainly no abuse of discretion occurred.

CERTIFICATION BY THE ATTORNEY GENERAL

Section 5032 of 18 U.S.C. reads, in pertinent part:

> A juvenile alleged to have committed an act of juvenile delinquency shall not be proceeded against in any court of the United States unless the Attorney General, after investigation, certifies to an appropriate district court of the United States that the juvenile court or other appropriate court of a State (1) does not have jurisdiction or refuses to assume jurisdiction over said juvenile with respect to such alleged act of juvenile delinquency, or (2) does not have available programs and services adequate for the needs of juveniles.
>
> If the Attorney General does not so certify, such juvenile shall be surrendered to the appropriate legal authorities of such State.

All three appellants contend that the district court erred by denying their motions to strike certification, asserting that the government failed to comply with § 5032 by failing to submit a properly certified petition to the district court. The crux of all three arguments is that because the current Attorney General, Janet Reno, did not delegate the authority to prosecute the case for adult prosecution, certification was improper. We disagree.

The government filed a motion entitled Certification to Proceed Under the Juvenile Justice and Delinquency Act, attached to which was a 1985 memorandum to all U.S. Attorneys from the then Assistant Attorney General – Criminal Division delegating authority to, inter alia, prosecute juveniles as adults. Such a delegation was authorized by an outstanding order of a previous Attorney

General and is contained in the Code of Federal Regulations.  It

provides as follows:

> The Assistant Attorney General in charge of
> the Criminal Division and his Deputy Assistant
> Attorneys General are each authorized to
> exercise the power and authority vested in the
> Attorney General by sections 5032 and 5036 of
> Title 18, United States Code, relating to
> criminal proceedings against juveniles.  The
> Assistant Attorney General in charge of the
> Criminal Division is authorized to redelegate
> any function delegated to him under this
> section to United States Attorneys and to the
> Chief of the Section within the Criminal
> Division which supervises the implementation
> of the Juvenile Justice and Delinquency
> Prevention Act (18 U.S.C. § 5031 et seq.).

28 CFR 0.57.

This order is authorized and within the scope of the powers of

the Attorney General under 28 U.S.C. § 510.[2]  United States v.

Cuomo, 525 F.2d (5th Cir. 1976).

It is clear that the certificate was properly authorized and

we reject appellants' argument that the delegation made by the

previous Attorney General is not applicable to allow the instant

certifications.  The power provided the Attorney General by 28

U.S.C. § 510 is made to the office of the Attorney General and not

to the individual holding office.  Grand Jury v. United States, 420

F.2d 1201 (7th Cir. 1970).

We note additionally that the U. S. Attorney, Ruth Yeager, for

the Eastern District of Texas, from whence this lawsuit emanated,

---

[2]Title 28 U.S.C. 510 provides as follows:  The Attorney
General may from time to time make such provisions as he
considers appropriate authorizing the performance by any other
officer, employee, or agency of the Department of Justice of any
function of the Attorney General.

-10-

requested and received authorization from Mary Spearing, Chief, General Litigation and Legal Advice Section, Criminal Division, Department of Justice, to prosecute the three juveniles. This exact procedure was previously challenged, and its use affirmed, by this court. See Doe, 871 F.2d at 1256-57. The district court properly denied the appellants' motions to strike certification.


THE SPEEDY TRIAL
CLAIM UNDER SECTION 5036


On February 8, 1994, 21 days after the information was filed in the district court, and 21 days after the appellants were taken into custody by federal officials, appellants each filed a motion to dismiss pursuant to § 5036 of the Act. Section 5036 provides as follows:

> If an alleged delinquent who is in detention pending trial is not brought to trial within thirty days from the date upon which such detention was begun, the information shall be dismissed on motion of the alleged delinquent or at the direction of the court, unless the Attorney General shows that additional delay was caused by the juvenile or his counsel, or consented to by the juvenile and his counsel, or would be in the interest of justice in the particular case. Delays attributable solely to court calendar congestion may not be considered in the interest of justice. Except in extraordinary circumstances, an information dismissed under this section may not be reinstituted.

Each of the appellants contend, as they did before the district court, that the 30-day period provided for in § 5036 commenced on November 26, 1993, when the state authorities arrested

and detained them pending state charges. If the date of their detention by state authorities does in fact commence the 30-day period, they contend that they were entitled to a dismissal of the federal information filed against them. In U.S. v. John Doe, 882 F.2d 926 (5th Cir. 1989), this court determined that the speedy trial period under § 5036 commences when a juvenile is arrested and taken into physical custody. Id. at 928-929. However, the arrest and physical detention of the appellant in John Doe was made by federal authorities. Thus, we were not called upon to consider whether a detention by state authorities would commence the 30-day period. The question squarely presented in this appeal (and which we have not previously determined), is whether an arrest solely by state authorities pending state charges starts the § 5036 speedy trial period. We hold that it does not. A reading of § 5032 previously referred to in this opinion clearly reveals Congress' intent to limit the circumstances under which federal courts would entertain cases alleging violation of criminal statutes by juveniles. Nonetheless, Congress specifically authorized the U.S. Attorney to certify to circumstances under which the Attorney general could maintain an action in the federal district courts. By filing such a certificate, the Attorney General is not required to surrender a juvenile to state authorities. Clearly the Act contemplates federal action and detention by federal officials. Section 5036 makes no mention of a state detention nor are we inclined to insert a provision for state detention into the speedy trial provisions of the Act. Were we to determine that a state

-12-

detention by state officers commences the speedy trial provisions of § 5036, we would in effect destroy the authority of the Attorney General to make those certifications which Congress clearly provided to allow a proceeding to be maintained in a federal district court. Such a holding would thwart the federal jurisdiction in actions that Congress determined could be maintained in the federal courts. It seems readily apparent that the detention pending trial referred to in § 5036 refers to a detention pending a federal trial, not a state trial.

In this case, the certifications provided both that (1) there is a substantial federal interest in the case to warrant the exercise of federal jurisdiction due to the extreme serious nature of the crime, the brutality of the crime which resulted in the death of the victim, and the fact that the appellants used a firearm which had previously travelled in interstate commerce to commit their offense, and (2) the State of Texas does not have available programs and services adequate for the needs of the appellants. The Attorney General thus certified to two of three circumstances which Congress provided would allow a juvenile to be detained in federal authorities pending adjudication by a federal district court. Congress did not provide and could not have intended that the provisions it enacted to allow federal court action could be stripped away by a state arrest and detention.

Accordingly, we hold that the 30-day period under § 5036 commences with an arrest and physical detention by federal authorities.

Additionally, we note with approval the reasoning of the Tenth Circuit which also held that detention under § 5036 begins when a juvenile defendant is taken into federal custody. U.S. v. Doe, 642 F.2d 1206 (10th Cir. 1981).

For the foregoing reasons, we **AFFIRM** the order of the district court transferring appellants for prosecution as adults.