**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                    No. 94-5704

JUVENILE MALE,
Defendant-Appellant.

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                    No. 94-5705

UNDER SEAL,
Defendant-Appellant.

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                    No. 94-5706

UNDER SEAL,
Defendant-Appellant.

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                    No. 94-5708

UNDER SEAL,
Defendant-Appellant.

Appeals from the United States District Court
for the District of Maryland, at Baltimore.
Frederic N. Smalkin, District Judge.
(CR-94-229-S, CR-94-242-S)

Argued: November 3, 1995

Decided: February 2, 1996

Before RUSSELL and HALL, Circuit Judges, and MICHAEL,
Senior United States District Judge for the Western District of
Virginia, sitting by designation.

_____

Affirmed by published opinion. Senior Judge Michael wrote the opin-
ion, in which Judge Russell and Judge Hall joined.

_____

## COUNSEL

**ARGUED:** Stephen L. Purcell, Columbia, Maryland, for Appellants.
Andrew George Warrens Norman, Assistant United States Attorney,
Baltimore, Maryland, for Appellee. **ON BRIEF:** Mark L. Gitomer,
CARDIN & GITOMER, P.A., Baltimore, Maryland; Alan C. Drew,
DREW & GOLDBERG, Upper Marlboro, Maryland; Arcangelo M.
Tuminelli, Baltimore, Maryland, for Appellants. Lynne A. Battaglia,
United States Attorney, Baltimore, Maryland, for Appellee.

_____

## OPINION

MICHAEL, Senior District Judge:

This matter comes before the court upon four juveniles' consoli-
dated appeal of an order of the United States District Court, District
of Maryland, denying the juveniles' respective motions to dismiss
informations charging delinquency. The juveniles moved the district

court to dismiss the informations, pursuant to 18 U.S.C. § 5036, claiming that the government had failed to bring them to trial within thirty days of "administrative detention" by the United States Immigration and Naturalization Service ("INS"). The juveniles moved for dismissal also on the ground that the juveniles' respective parents or guardians were not "immediately notified" of the juveniles' arrests, and on the ground that the juveniles were not brought before a Magistrate Judge "forthwith" following their being taken into INS custody on April 5, 1994, as required pursuant to 18 U.S.C.§ 5033. We affirm the district court and hold that the provisions relied upon by the juveniles are not invoked until a juvenile is charged by information with an act of delinquency, as required pursuant to 18 U.S.C. §§ 5031 and 5032.

I.[1]

On April 5, 1994, agents of the INS and of the Federal Bureau of Investigation ("FBI") conducted a search of a private residence located in Mitchelville, Maryland, where it was suspected that Chinese nationals were holding kidnaped Chinese nationals in furtherance of an international conspiracy to smuggle illegal aliens from the Peoples Republic of China into the United States. The agents placed the juvenile[2] under arrest.[3] Upon questioning by the agents, the juvenile recited an incorrect birth date, and, as a result of the incorrect information, the INS was unable to verify the juvenile's immigration status. Accordingly, the INS placed the juvenile into so-called "administrative detention" pending deportation proceedings. On May 27,

_____

[1] We address the issues presented by this appeal in light of the facts presented by the lead case, No. 94-5704, regarding the juvenile designated as "Juvenile Numbered `24'." We understand that the facts regarding Juveniles Numbered "22," "26," and"31" are substantially similar and present no basis for any factual distinction to the legal analysis of this appeal.

[2] At the time of his arrest, the suspect was a minor under the age of eighteen and therefore a "juvenile" as that term is defined by 18 U.S.C. § 5031.

[3] The juvenile's father was placed under arrest at the same time. At all times relevant to this matter, the juvenile's father was in custody. The juvenile's mother is reportedly deceased.

1994, the INS learned of the juvenile's correct birth date and confirmed the juvenile's status as a lawful resident of the United States.

On June 3, 1994, the government filed a criminal complaint charging the juvenile, among others, with kidnaping and conspiracy to kidnap, in violation of 18 U.S.C. § 1201; with hostage taking, in violation of 18 U.S.C. § 1203; and with transportation and harboring of illegal aliens, in violation of 8 U.S.C. § 1324.[4] On that same date, the INS dismissed its deportation proceedings and released the juvenile into the custody of the United States Marshal. Additionally, on that same date, the juvenile was arraigned before a Magistrate Judge.

On June 6, 1994, the juvenile was again brought before a Magistrate Judge and counsel was appointed. On June 8, 1994, the government filed an information charging the juvenile with delinquency.[5] On June 9, 1994, the government filed a motion to transfer seeking leave to try the juvenile as an adult. On June 23, 1994, the district court denied the government's motion to transfer.

On July 13 - 15, 1994, a bench trial was conducted before the Honorable Frederic N. Smalkin, Judge, United States District Court for

_____

[4] The record is devoid of any explanation regarding the government's filing the criminal complaint against the juvenile. The court can only assume that the government filed the complaint against the juvenile because the juvenile had turned eighteen years old on the day before the complaint was filed. The court assumes further that the government's filing the criminal complaint was in error and that such error is both harmless and irrelevant to the questions currently placed before it.

[5] The government filed two informations against the juvenile on June 8, 1994. The first information charged the juvenile with kidnaping and conspiracy to kidnap, in violation of 18 U.S.C.§ 1201; conspiracy to interfere with commerce by threats or violence, in violation of 19 U.S.C. § 1951(a); hostage taking, in violation of 18 U.S.C. § 1203; collection of an extension of credit by extortionate means, in violation of 18 U.S.C. § 894; use of a firearm during a crime of violence, in violation of 18 U.S.C. § 924(c), and aiding and abetting, in violation of 18 U.S.C. § 2. After a procedural challenge to the information on the ground that the government had failed to charge an offense of juvenile delinquency, the government filed a superseding information alleging the same criminal offenses as acts of juvenile delinquency, pursuant to 18 U.S.C. § 5032.

4

the District of Maryland. Judge Smalkin adjudged the juvenile guilty as to Counts One, Three, Four, and Seven of the information. On September 9, 1994, the juvenile was committed to the custody of the United States Attorney General for a term of five years.

II.

We review the question of whether the district court erred in denying the juveniles' motions to dismiss, pursuant to the speedy trial provision of the so-called Juvenile Justice and Delinquency Prevention Act, 18 U.S.C. § 5036, under a de novo standard of review. See United States v. United Medical & Surgical Supply Corp., 989 F.2d 1390, 1398 (4th Cir. 1993) ("Because the Defendants' challenge is not to the existence of the facts contained in the indictment, but whether those facts demonstrate a failure timely to prosecute their cases, resolution of this issue turns on questions of law which are reviewed de novo." (citations omitted)).

Title 18, United States Code, Section 5036 provides in relevant part that "[i]f an alleged delinquent who is in detention pending trial is not brought to trial within thirty days from the date upon which such detention was begun, the information shall be dismissed . . . ." (emphasis added). The juveniles focus on the term "detention" in arguing that their detention began on April 5, 1994, when the INS agents placed them into "administrative detention." Under the juveniles' viewpoint, detention means federal detention -- regardless of whether such detention is "administrative detention" by the INS or criminal custody by the FBI. See United States v. Romulus, 949 F.2d 713, 716 (4th Cir. 1991) ("The thirty-day speedy trial period begins to run from the date on which a juvenile is taken into federal custody."), cert. denied, 503 U.S. 992 (1992); United States v. Doe, 882 F.2d 926, 928 (5th Cir. 1989) ("detention" began at "the moment [the juvenile] was first placed in physically restrictive custody"). According to the juveniles, the informations against them should have been dismissed because more than thirty days elapsed between the point when the juveniles' "detention" began on April 5, 1994, and the trial of the juveniles commenced on July 13, 1994.

The government, on the other hand, focuses its argument on the phrase "detention pending trial." The government argues that the term

5

"detention" as used in § 5036 means custody pending the trial for an alleged act of juvenile delinquency. Under the governments viewpoint, the thirty-day speedy trial time clock did not begin to run until the date on which the juveniles were charged with acts of delinquency -- June 8, 1994 for Juvenile Numbered "24"; June 16, 1994 for Juveniles Numbered "22," "26," and "31." According to the government, the district court properly refused to dismiss the informations because the juveniles' trial commenced within thirty days of the government's filing the informations against the juveniles.[6]

We agree with the government. We note from the outset that proper statutory interpretation is compromised considerably when single terms or discrete phrases are improperly parsed from qualifying language within the provision. In this case, the juveniles pluck out the term "detention" and argue that detention includes any federal detention -- regardless of the federal agency involved or of the purposes for detention. The government relies upon the phrase "detention pending trial" to arrive at its conclusion that the detention pursuant to § 5036 must be the detention relative to the charge of juvenile delinquency. We believe that the government's position is bolstered when the language of the provision is examined under a broader scope: it is the "alleged delinquent" who must be in "detention pending trial." The speedy trial provision of § 5036 is not triggered until the juvenile is charged by information and thus obtains the status of an "alleged

_____

[6] Regarding Juvenile Numbered "24," the government contends that the time period between June 9, 1994, and June 23, 1994, is excluded properly from the calculation of the thirty-day speedy trial requirement of § 5036 because the time period during which the district court considered the government's motion to transfer to adult status qualifies for the "in the interest of justice in the particular case" exemption of that section. See United States v. Wong, 40 F.3d 1347, 1371 (3d Cir. 1994); Romulus, 949 F.2d at 716. The juvenile does not appear to contest the government's contention. We note with interest that in these cases cited by the government, the district courts in each granted the government's motions to transfer, and therefore the speedy trial provision of § 5036 was rendered inapplicable. However, because the juvenile does not raise the issue, we assume without deciding that the time period from June 9, 1994 to June 23, 1994, is excluded properly from the calculation of the speedy trial time in the case where a district court denies the government's motion to transfer and the provision of § 5036 remains applicable.

6

delinquent."[7] Thus, the proper interpretation of the plain language of the applicable provisions reveals that until a juvenile has been charged by an information, pursuant to § 5032, with the commission of an act of delinquency which would have been a crime if committed by an adult, pursuant to § 5031, then the juvenile is not an "alleged delinquent who is in detention pending trial" for the purpose of invoking the thirty-day speedy trial provision of § 5036.[8]

The juveniles misplace their reliance upon a statement by a panel of this court in Romulus that "[t]he thirty-day speedy trial period begins to run from the date on which a juvenile is taken into federal custody." In Romulus, the juvenile-defendant was arrested and taken into custody by the North Carolina State Police on April 2, 1990. The

_____

[7] Juvenile Numbered "24" argues that the government knew that it was going to prosecute the juvenile and that the delay in filing the information was a mere ruse to delay the proceeding against the juvenile. This allegation, however, ignores the factual evidence that the juvenile provided the INS agents with an incorrect birth date. Counsel for the government represented to this court that the computer records of the INS are very specific and that database retrieval procedures require precise data input. This court has no basis for questioning the government's counsel's representation. Besides, the juvenile would have us engraft language onto § 5036 such as: "If a juvenile who is arrested and will likely be charged delinquent is in any federal detention for a period of more than thirty days before trial on any federal charge resulting from the arrest, then the court shall dismiss the information." Congress did not draft § 5036 so broadly and this court declines so to amend.

[8] In United States v. Doe, 882 F.2d 926 (5th Cir. 1989), the court held that the thirty-day speedy trial clock pursuant to § 5036 began to run when the juvenile was "first placed in physically restrictive custody." Id. at 928. The Doe court relied upon the ordinary usage of the word "detention": "`(1) the act or fact of detaining: (a) holding in custody . . . .'" Id. (quoting Webster's Third New International Dictionary 616). As a result of such reliance, the court rejected the government's assertion that "detention" began when a detention order was filed. The Doe court concluded that the government's interpretation of § 5036 would require the court to add to the language of § 5036. We, however, do not find the Doe analysis to be persuasive. The interpretation of § 5036 that we adopt today does not require us either to supplement the language of the provision or to ignore its significant qualifying language.

7

juvenile-defendant first appeared before a federal magistrate judge on July 2, 1990. The juvenile-defendant sought dismissal on the ground that he had not been tried within thirty days of his being taken into custody. This court concluded that the § 5036 speedy trial clock began to run when the juvenile was taken into <u>federal</u> custody -- as opposed to <u>state</u> custody. The use of the term "federal custody" in <u>Romulus</u> should not be read as suggesting that every form of detention or custody effected by every department or agency of the federal government will necessarily trigger the speedy trial provision of § 5036. In the instant action, therefore, we define <u>federal custody or detention</u> for purposes of the § 5036 speedy trial provision as custody or detention pending trial pursuant to the charge by information of an act of delinquency.

III.

In accordance with the foregoing analysis, we are able to dispose quickly of the juveniles' two remaining claims. Section 5033 provides in relevant part that "[w]henever a juvenile is taken into custody for an alleged act of juvenile delinquency, the arresting officer . . . shall immediately notify . . . the juvenile's parents, guardian, or custodian of such custody." The juveniles claim that the government failed to "immediately notify" their respective parents or guardians of their arrests on April 5, 1994, in violation of § 5033. Regarding Juvenile Numbered "24," the government claims that it notified the juvenile's father, who was himself in federal custody, within four days of the juvenile's initial appearance before the federal magistrate judge, in compliance with § 5033.**9** We conclude that the requirement that the government "immediately notify" the juvenile's parent was not invoked on April 5, 1994, when the juvenile was initially arrested and

_____

**9** Interestingly, the juvenile does not argue that a four-day period between the juvenile's arrest and the government's notifying the parent violates the "immediately notify" requirement of § 5033. The government points out that the juvenile was not prejudiced by the four-day period because the juvenile's parent was in federal custody and was unable to render substantive assistance to the juvenile. For the purposes of this appeal, we assume that the juvenile concedes that a four-day period does not violate the "immediately notify" requirement of § 5033, and we decline to comment on the merits of the government's position.

8

placed into "administrative detention" by the INS; rather, the requirement was invoked on June 8, 1994, when the juvenile "was taken into custody [of the U.S. Marshal] for an alleged act of juvenile delinquency." Again, the determinative factor is that the juvenile was not taken into custody for an alleged act of delinquency until the information alleging such an act of delinquency was filed on June 8, 1994. Thus, the district court was correct in declining to dismiss the information against the juvenile on the claim that the government had failed to "immediately notify" the juvenile's parent, in violation of § 5033.[10]

_____

[10] Regarding Juvenile Numbered "31," the government claims, without opposition, that the government contacted the juvenile's uncle and explained the nature of the charges against the juvenile. The court assumes that this contact occurred on or about June 16, 1994. Regarding Juvenile Numbered "22," the government claims that it was unsuccessful in notifying the juvenile's next-of-kin because the juvenile refused to answer any questions regarding his relatives. Regarding Juvenile Numbered "26," the government claims that it notified the juvenile's brother. In these latter two cases, the government relies upon the juveniles' respective counsels' representations that it was their opinion that the government had complied with the parental notification provision of § 5033.

These juveniles suggest that the government failed to comply with the parental notification requirement because it failed to notify the Chinese Consulate. See United States v. Doe, 862 F.2d 776 (9th Cir. 1988) ("section 5033 requires that the Consulate be notified of [an alien's] status"). The Doe court relied upon a previous case, United States v. Doe, 701 F.2d 819 (9th Cir. 1983), in which it held: "For those juveniles whose parents live outside the United States, if it is not feasible to notify a parent or guardian, the government could alternatively notify a foreign consulate in the United States." Id. at 822. In the instant case, there is no factual basis supporting the contention that the juveniles' parents were outside the United States. Furthermore, the two Doe cases involved juveniles who were illegal aliens in the United States. In the instant action, the record is unclear whether any of the juveniles were illegal aliens. Consequently, we are not convinced that the "immediately notify" provision of § 5033 requires the government to notify a foreign consulate whenever the government uses reasonable, albeit unsuccessful, efforts to notify parents, guardians, or next-of-kin of the arrest of a juvenile who holds legal resident status in the United States.

9

Likewise, the district court was correct in declining to dismiss the informations against the juveniles on the claim that the juveniles were not "taken before a magistrate judge forthwith," in violation of § 5033. In this case, Juvenile Numbered "24" appeared before a magistrate judge on June 3, 1994 -- the date on which the government filed the criminal complaint against the juvenile-- and again on June 6, 1994. The information was filed on June 8, 1994. Thus, it appears from the factual background that the juvenile was brought before a magistrate judge <u>before</u> the information was filed. Indeed, the juvenile had counsel appointed to him before the information was filed and while the criminal charges were pending against the juvenile. We are unable to ascertain the statutory violation alleged by the juvenile under the circumstances of this case.**11**

IV.

For the foregoing reasons, the order of the district court denying the juveniles' motions to dismiss the informations against them for alleged violations of 18 U.S.C. §§ 5033 and 5036 shall be, and it hereby is,

<u>AFFIRMED</u>.

_____

**11** There was a five-day period between the filing of the information against Juveniles Numbered "22" and "26" and their initial appearances before a magistrate judge; there was a six-day period relative to Juvenile Numbered "31." The district court judge found that "all of the juveniles had their initial appearance[s] before a magistrate within days of the criminal information being filed" and that such a period of time was "reasonable." Without relevant and persuasive argument by the juveniles to the contrary, this court is neither equipped nor prepared to reverse the district judges determination.

10