961 F.2d 97
 Daryl A. DIEBOLD; Daton L. Plumblee, Plaintiffs-Appellants,
v.
UNITED STATES of America; Attorney General of the United
States; General Thomas C. Foley; Mike Stone,
Secretary; Colbar, Inc., Defendants-Appellees.
 No. 90-5373.
 United States Court of Appeals,
Sixth Circuit.
 March 24, 1992.
 
 Ralph M. Mobley, Elizabethtown, Ky. (argued and briefed), for plaintiffs-appellants.
 Joseph M. Whittle, U.S. Atty., James H. Barr, Asst. U.S. Atty., Louisville, Ky., Timothy Goblirsch, Ft. Knox, Ky., Miguel A. Escalera, Jr. (briefed), Dept. of Army, Office of the Judge Advocate General, Washington, D.C., Christopher J. O'Brien (argued and briefed), DAJA-LTC, Dept. of Army, Litigation Div., Arlington, Va., Lawrence L. Pedley (briefed), Pedley, Ross, Zielke, Gordinier & Porter, Louisville, Ky., Joel R. Feidelman (briefed), Alan M. Grayson (argued), Richard D. Leiberman, Fried, Frank, Harris, Shriver & Jacobson, Washington, D.C., for defendants-appellees.
 Before: MERRITT, Chief Judge; JONES, Circuit Judge; and WELLFORD, Senior Circuit Judge.
 ORDER DENYING PETITION FOR REHEARING
 The full court has denied the petition of the Department of Justice for en banc review. Although our dissenting colleague states that "a majority of those voting would have directed review," the parties should not be misled by this statement. The vote of the court, recorded January 30, 1992, when there were thirteen members of the court, was nine against en banc review, four for review. We do not understand our colleague's meaning. Under our procedure all members of the court know that there are two ways to effectively vote against an en banc petition. One way is to send in a recorded vote against it. The other way is simply to fail to vote in favor of en banc review. In this case nine members of the court either voted against the petition or did not vote in favor of the petition, thereby effectively casting their vote against en banc review.
 This case for some reason has caused more than the usual degree of consternation on the part of the losing party. In what we consider to be a less than respectful petition for rehearing, counsel for the Department of Justice quotes thrice, and bases his main argument on, the following language from Circular A-76:
 
 
 1
 This Circular and its supplement shall not ... establish and shall not be construed to create any substantive or procedural basis for anyone to challenge any agency action or inaction on the basis that such action or inaction was not in accordance with this Circular.
 
 
 2
 Counsel for the Justice Department contends on this basis that the administrative agency in question, the Office of Federal Procurement Policy, is entitled to control by executive decision the jurisdiction of Article III federal courts to review the agency's administrative action under the Administrative Procedure Act.
 
 
 3
 Neither Government counsel nor our dissenting colleague provides authority--statutory, case law, scholarly or otherwise--for the proposition that an executive agency may validly decide and declare that it does not wish its actions to be reviewed by an Article III court under the Administrative Procedure Act. It is understandable that many agencies and critics of the courts would prefer that the executive branch be left alone without judicial review, but our research discloses no case, statute or theory which leaves it to the agency in question to decide whether it prefers to omit judicial review of its actions. Congress decided that question when it adopted § 10 of the Administrative Procedure Act which requires judicial review of final agency action. The Supreme Court has observed in Abbott Laboratories v. Gardner, 387 U.S. 136, 141, 87 S.Ct. 1507, 1511, 18 L.Ed.2d 681 (1967), that "only upon a showing of 'clear and convincing evidence' of a contrary legislative intent should courts restrict access to judicial review." The Court has repeated this same requirement in many later opinions. See, e.g., Association of Data Processing Service Organizations v. Camp, 397 U.S. 150, 156, 90 S.Ct. 827, 831, 25 L.Ed.2d 184 (1970); Barlow v. Collins, 397 U.S. 159, 166-67, 90 S.Ct. 832, 837-38, 25 L.Ed.2d 192 (1970); Tooahnippah v. Hickel, 397 U.S. 598, 606, 90 S.Ct. 1316, 1321, 25 L.Ed.2d 600 (1970); Citizens to Preserve Overton Park v. Volpe, 401 U.S. 402, 410, 91 S.Ct. 814, 820, 28 L.Ed.2d 136 (1971); Dunlop v. Bachowski, 421 U.S. 560, 567, 95 S.Ct. 1851, 1858, 44 L.Ed.2d 377 (1975); Bowen v. Michigan Academy of Family Physicians, 476 U.S. 667, 106 S.Ct. 2133, 90 L.Ed.2d 623 (1986); Traynor v. Turnage, 485 U.S. 535, 108 S.Ct. 1372, 99 L.Ed.2d 618 (1988). The question under the Administrative Procedure Act is what is the intent of Congress, not the intent of the executive agency whose action is being reviewed. It is the function of courts established under Article III of the Constitution to interpret the Administrative Procedure Act concerning the right of citizens to obtain judicial review, not the function of executive agencies to determine whether they wish to be reviewed by courts or not.
 
 
 4
 Contrary to the argument of counsel, we do not believe that the agency itself intended by its language to reserve unto itself the authority to determine judicial review:
 
 
 5
 The [internal agency] appeals procedure is to provide an administrative safeguard to ensure that agency decisions are fair and equitable and in accordance with procedures in Part IV of this Supplement. The procedure does not authorize an appeal outside the agency or a judicial review.
 
 
 6
 The appeals procedure must be independent and objective and provide for a decision within 30 calendar days of receipt of the appeal.... The original appeal decision shall be final unless the agency procedures provide for further discretionary review.
 
 
 7
 Circular Supplement, Part I, Para. I(2) & (3). See also 32 C.F.R. § 169a.18.
 
 
 8
 This language seems designed to insure that nothing stated in the language which creates the agency appeals process should be read in itself to establish judicial review. The agency itself does not seem to try to forbid Article III courts from exercising their normal functions as the Justice Department strongly contends. We therefore reject the petition of the Department of Justice to reverse our opinion holding that the executive branch may not decide for itself the question whether the authority in question is exclusively committed to agency discretion.
 
 
 9
 We have previously discussed at length the case law in this area and continue to believe that our decision here is consistent with previous authority. 947 F.2d 787, 801-810 (1991). We adhere to our panel decision.
 
 WELLFORD, Senior Circuit Judge, dissenting:
 
 10
 I adhere to my original dissent in this case for the reasons set out. I would also grant the motion to rehear. En banc review of the panel decision has been denied despite the fact that a majority of those judges on the court who voted would have directed review by the entire court.[1]
 
 
 11
 The panel majority bases its decision, in substantial part, on analysis of OMB Circular A-76. The United States bases its petition for rehearing, in part, upon language from that Circular:
 
 
 12
 This Circular and its Supplement shall not * * * establish and shall not be construed to create any substantive or procedural basis for anyone to challenge any agency action or inaction on the basis that such action or inaction was not in accordance with this Circular.
 
 
 13
 (Emphasis added). The panel majority seems to take offense at this citation:
 
 
 14
 All of the courts which have considered the issue have held that conversion decisions made by the Department of Defense officials under Circular A-76 are committed to agency discretion and are not subject to judicial review. Local 2855, AFGE v. United States, 602 F.2d 574 (3d Cir.1979); American Federation of Government Employees v. Stetson, C.A. No. 77-2146 (D.D.C. July 2 1979); American Federation of Government Employees v. Hoffmann, 427 F.Supp. 1048, 1082-84 (N.D.Ala.1976); and AFGE, Local 1688 v. Dunn, No. A-75-156 (D.Alaska Sept. 30, 1975); aff'd on other grounds, 561 F.2d 1310 (9th Cir.1977).
 
 
 15
 American Fed'n of Gov't Emp. v. Brown, 680 F.2d 722, 726 (11th Cir.1982), cert. denied, 459 U.S. 1104, 103 S.Ct. 728, 74 L.Ed.2d 952 (1983) (emphasis added). I find all these decisions, and others cited to the same effect, are applicable to the case before us. The revision of Circular A-76 does not affect this applicability, in my view, and later decisions after its amendment adhere to the same rationale.
 
 
 16
 The United States explained its position more fully in this regard in its petition, n. 3:
 
 
 17
 The question whether A-76 cost comparisons are subject to judicial review does not turn on whether the other branches are involved; it turns on whether there are "judicially manageable standards" (Heckler v. Chaney, 470 U.S. 821, 830 [105 S.Ct. 1649, 1655, 84 L.Ed.2d 714] (1985) (emphasis added)) for courts to apply.
 
 
 18
 Moreover, although the panel finds "[p]articularly noteworthy" the Comptroller General's statutory bid-protest authority under 31 U.S.C. §§ 3551-3556, that authority is, in fact, considerably more limited than the panel's opinion suggests. Slip op. 36; see id. at 9 n. 2, 22. The panel's opinion fails to mention that Congress has authorized the Comptroller General to issue only nonbinding recommendations, not binding rulings on the merits. 31 U.S.C. § 3554(b)(1). In addition, the Comptroller General entertains protests only by disappointed bidders, not agency employees. 31 U.S.C. § 3551(2); see slip op. 33 n. 11. Furthermore, in the exercise of his statutory bid-protest function, the Comptroller General "has repeatedly declined to render decisions concerning the propriety of an agency's determination under Circular A-76 to contract for services instead of performing the work in-house," ...
 
 
 19
 I think the Comptroller General's interpretation of the Circular is both correct and material. Of course, it is the court's function to determine the question of judicial review, and, in all respect to the majority, I do not perceive the government's petition to suggest the agency itself might "reserve unto itself the authority to determine judicial review." Parts of the APA indicate only "that the agency itself is not trying to create judicial review." Slip op. 38, n. 12 (emphasis added).
 
 
 20
 The majority opinion is the first and only decision to find that the APA is controlling and mandating judicial review in this kind of situation involving a challenge by disaffected employees to a complex and complicated analysis of costs. The government's petition cites numerous cases holding that judicial review under the APA does not apply in a cost study conversion decision of this kind, and maintains that we should follow this authority. I do not perceive this to be "less-than-respectful."
 
 
 
 [1]
 An en banc requires the affirmative vote of a court majority; of those actually voting, a majority of active judges favored an en banc hearing in this case