109 F.3d 626
 97 Cal. Daily Op. Serv. 2119, 97 Cal. Daily
Op. Serv. 2158,
97 Daily Journal D.A.R. 3914
UNITED STATES of America, Plaintiff-Appellee,
v.
John DOE, a Juvenile, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellant,
v.
John DOE, a Juvenile, Defendant-Appellee.
 Nos. 95-10455, 95-10561.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Oct. 3, 1996.
Decided March 25, 1997.
 
 Vincent Q. Kirby, Assistant United States Attorney, Phoenix, Arizona, for the plaintiff-appellee-cross-appellant.
 Gerald A. Williams, Assistant Federal Public Defender, Phoenix, Arizona, for the defendant-appellant-cross-appellee.
 Appeals from the United States District Court for the District of Arizona, Paul G. Rosenblatt, District Judge, Presiding. D.C. No. CR-94-369-PGR.
 Before: BEEZER and THOMPSON, Circuit Judges, and GILLMOR, District Judge.*
 BEEZER, Circuit Judge:
 
 
 1
 This interlocutory appeal involves an order granting the motion of the United States to proceed against a juvenile as an adult. The United States cross-appeals the district court's order to suppress certain incriminating statements made by the juvenile. We have jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3731. We affirm the district court's order granting the motion to proceed against the juvenile as an adult and reverse the district court's order to suppress the statements made by the juvenile.I
 
 
 2
 The events at issue took place on the night of April 26, 1991. The government alleges that Doe, who was age 17 at that time, and another juvenile participated in the stabbings of five victims. The stabbings resulted in two deaths. Navajo Tribal Police arrested Doe and the other juvenile about one a.m. and took them to the Chinle, Arizona tribal police station. At about five a.m., Doe was questioned by an FBI agent who had been requested by tribal police to aid with the investigation of the stabbings. Doe, who had been given Miranda warnings, waived his rights and spoke with the FBI agent. Doe made statements at that time that are the subject of the government's cross-appeal. After questioning Doe about the crimes, the FBI agent determined that he was a juvenile.
 
 
 3
 On December 22, 1994, the United States filed an information against Doe, charging him with First Degree Murder, Burglary and Assault under the Federal Juvenile Delinquency Act, 18 U.S.C. §§ 5031-5037. Doe moved to suppress the statements he made, claiming that 18 U.S.C. § 5033 required that his parents should have been notified of his arrest. The United States subsequently moved to proceed against Doe as an adult. The district court granted the government's motion, and ordered the statements suppressed. These appeals followed.
 
 II
 
 4
 Doe argues that the district court abused its discretion in granting the government's motion to proceed against him as an adult. The decision to grant the government's motion is within the district court's discretion unless "it fails to make the required ... findings or where the findings it does make are clearly erroneous." United States v. Doe, 94 F.3d 532, 536 (9th Cir.1996) (quoting United States v. Nelson, 68 F.3d 583, 588 (2nd Cir.1995)). The district court is required to consider and make specific findings with respect to six factors, which are enunciated in 18 U.S.C. § 5032. In making a transfer decision, it is within the district court's discretion to find one factor more compelling than the others. United States v. Alexander, 695 F.2d 398, 401 (9th Cir.) cert. denied, 462 U.S. 1108, 103 S.Ct. 2458, 77 L.Ed.2d 1337 (1983). The factors to be considered are:
 
 
 5
 the age and social background of the juvenile; the nature of the alleged offense; the extent and nature of the juvenile's prior delinquency record; the juvenile's present intellectual development and psychological maturity; the nature of past treatment efforts and the juvenile's response to such efforts; the availability of programs designed to treat the juvenile's behavioral problems.
 
 
 6
 18 U.S.C. § 5032. We conclude that the findings made by the district court on the first five factors are amply supported in the record.
 
 
 7
 As for the sixth factor, Doe contends that the government failed to present any evidence favoring transfer on this point and that the district court failed to consider what juvenile treatment programs were available to help him. In papers submitted to the district court, the government stated without elaboration that because Doe "is now 21 years of age, there are no juvenile programs available to him." The district court, along with noting Doe's limited success in past treatment efforts, accepted the government's position.
 
 
 8
 In United States v. Doe, we concluded that the government could not carry its burden of persuasion on the need to transfer a juvenile to adult status when "the government has done no more than assert the unavailability of an appropriate program." United States v. Doe, 94 F.3d at 539; see Nelson, 68 F.3d at 591. This case is distinguishable, however. In this case, Doe had reached adulthood at the time of his hearing in the district court. We do not think the government should have to produce evidence of why certain programs, designed to treat juveniles, are inappropriate for someone who has now attained adulthood.
 
 
 9
 Further, we do not think the district court should be required to do more than it did in this case. To accept such a position would require us to adopt an absurd reading of 18 U.S.C. § 5033 under which the district court would abuse its discretion if it did not consider what juvenile treatment programs were available to treat an adult. This we decline to do. We conclude the district court did not abuse its discretion in granting the government's motion for transfer.
 
 III
 
 10
 The United States cross-appeals the district court's order to suppress inculpatory statements made by Doe in response to questions put to him by an FBI agent. The district court concluded "on the entire record that [Doe's] waiver was [not a] knowing and intelligent and voluntary relinquishment of the known right." Nothing in the record shows, however, that the district court relied on anything other than its interpretation of a parental notification provision found in 18 U.S.C. § 5033. The question before us, then, is whether the district court correctly interpreted 18 U.S.C. § 5033 to require the tribal authorities who arrested Doe to notify his parents. We review questions of statutory interpretation de novo. United States v. Eaton, 31 F.3d 789, 791 (9th Cir.1994).
 
 The statute provides:
 
 11
 Whenever a juvenile is taken into custody for an alleged act of juvenile delinquency, the arresting officer shall immediately advise the juvenile of his legal rights, in language comprehensive to a juvenile, and shall immediately notify the Attorney General and the juvenile's parents, guardian or custodian of such custody. The arresting officer shall also notify the parents, guardian or custodian of the rights of the juvenile and of the nature of the alleged offense.
 
 
 12
 The juvenile shall be taken before a magistrate forthwith. In no event shall the juvenile be detained for longer than a reasonable period of time before being brought before a magistrate.
 
 
 13
 18 U.S.C. § 5033. The district court stated that 18 U.S.C. § 5033 applied to Doe because, although he was being held by tribal authorities on tribal charges, "sooner or later it was going to be determined that he was a juvenile and would be then, subject to federal prosecution, entitled to the protections of 18 U.S.C. § 503.1(f)(c), [sic] which are the juvenile delinquency statutory provisions. Those provisions provide clearly that a juvenile's parents are to be notified." Further, in denying the government's motion to reconsider, the district court concluded that "it flies in the face of the underlying concept of application of [In re ] Gault that we should rule that because the juvenile in this case was not in federal custody, that therefore the provisions of 18 U.S.C. § 5033 would not apply."
 
 
 14
 The district court's interpretation of the statute is at odds with the plain language of the statute. The statute declares that when a juvenile is taken into "custody," the "arresting officer" is required to notify the Attorney General and the parents, guardian or custodian of the juvenile. 18 U.S.C. § 5033. Further, the statute provides that such a juvenile must be taken "before a magistrate forthwith," and that the juvenile shall not be detained for "longer than a reasonable period of time" before being brought before the magistrate. Id. By using the terms "arresting officer" and "custody," the language of 18 U.S.C. § 5033 implies that a federal arrest on a federal charge must occur for the statute to apply. See United States v. Alvarez-Sanchez, 511 U.S. 350, 358-59, 114 S.Ct. 1599, 1604, 128 L.Ed.2d 319 (1994). At the time of his questioning by the FBI agent, Doe had only been arrested and held on tribal charges.
 
 
 15
 The Court's holding in United States v. Alvarez-Sanchez is instructive here. In Alvarez-Sanchez, the Court interpreted 18 U.S.C. § 3501, which provides that, in any federal criminal prosecution, "a confession made ... by a person who is a defendant therein, while such person was under arrest or other detention in the custody of any law enforcement officer ... shall not be inadmissible solely because of delay in bringing such person before a magistrate." The Court held that a person questioned by a federal officer while being held on state charges was outside the protection afforded by 18 U.S.C. § 3501. Id. Seizing upon the word "delay," the Court concluded that there could not be a delay without a corresponding duty or obligation, and that the duty to bring someone before a federal magistrate did not arise until a federal arrest on federal charges had occurred. Id. at 356-59, 114 S.Ct. at 1603-04. Thus, the duty to bring a person before a federal magistrate could not occur while the person was being held only on state charges. Id. at 358-59, 114 S.Ct. at 1604.
 
 
 16
 We think the approach taken by the Court in Alvarez-Sanchez provides the best point of departure for purposes of our interpretation of 18 U.S.C. § 5033. Not only does the statute speak of a juvenile being taken into "custody" by an "arresting officer," it also dictates that the arrested juvenile be taken "before a magistrate forthwith" and that a juvenile be detained for "no longer than a reasonable period of time" before being brought before a magistrate. 18 U.S.C. § 5033. Following Alvarez-Sanchez and the language of the statute, the ineluctable conclusion is that Doe had not been taken into custody for purposes of 18 U.S.C. § 5033. See United States v. Juvenile Male, 74 F.3d 526, 530 (4th Cir.1996) (holding that the parental notification provision of 18 U.S.C. § 5033 did not apply until an information had been filed against the juvenile).
 
 
 17
 The district court also made reference to the "underlying concept" of the Court's decision in In re Gault, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527, where the Court extended Constitutional procedural protections to juvenile delinquency adjudications. Id. at 31-55, 87 S.Ct. at 1445-58. The Court specifically declined in Gault, however, to address the "procedures or constitutional rights applicable to the pre-judicial stages of the juvenile process." Id. at 13, 87 S.Ct. at 1436. As a result, Gault provides us with little insight in this case beyond its general admonition that law enforcement and courts take care to assure that admissions made by juveniles are voluntary and not the "product of ignorance of rights or adolescent fantasy, fright, or despair." Id. at 55, 87 S.Ct. at 1458. Even though Gault does not specifically apply, the district court showed that its "underlying concept" was not even an issue in this case, as it concluded that there was "no issue" other than the lack of parental notification with respect to the circumstances of the questioning of Doe.
 
 IV
 
 18
 We conclude that the district court made sufficient findings and did not abuse its discretion in granting the government's motion to proceed against Doe as an adult. We reverse the district court's decision to suppress certain statements made by Doe because the provisions of 18 U.S.C. § 5033 do not apply on the facts of this case. We remand to the district court for proceedings consistent with this opinion.
 
 
 19
 AFFIRMED IN PART, REVERSED AND REMANDED IN PART.
 
 
 20
 GILLMOR, District Court Judge,* concurring in part and dissenting in part:
 
 
 21
 I join in the portion of the majority opinion affirming the District Court's decision to grant the government's motion to proceed against Doe as an adult. I dissent from the reversal of the District Court's order suppressing the statements made by Doe shortly after his arrest.
 
 
 22
 The District Court ordered the suppression of Doe's statements after concluding "on the entire record that [Doe's] waiver was [not a] knowing and intelligent and voluntary relinquishment of the known right." The voluntariness of a waiver of rights is reviewed de novo. United States v. Bautista-Avila, 6 F.3d 1360, 1364 (9th Cir.1993). Whether the waiver was knowing and intelligent is reviewed for clear error. Id. While the matter is reviewed de novo, the District Court was in the best position to assess the testimony regarding the circumstances surrounding Doe's statements, and the District Court's determination should not be lightly set aside.
 
 
 23
 * The majority reverses the District Court's suppression order on the ground that the court's decision rested entirely on an erroneous interpretation of 18 U.S.C. § 5033. Contrary to the majority's reading of the record, I do not agree that the District Court's decision rested exclusively on one factor. The District Court specifically stated that its decision was based on the "entire record," and the court considered the circumstances surrounding Doe's statements, including the traditional close cooperation between tribal and federal authorities.
 
 
 24
 The circumstances of this case triggered the protections of title 18 U.S.C. § 5033. These protections warranted that Doe's parents be notified of his detention and questioning concerning a murder investigation. Section 5033 provides in part:
 
 
 25
 Whenever a juvenile is taken into custody for an alleged act of juvenile delinquency, the arresting officer shall immediately advise such juvenile of his legal rights, in language comprehensive to a juvenile, and shall immediately notify the Attorney General and the juvenile's parents, guardian, or custodian of such custody. The arresting officer shall also notify the parents, guardian, or custodian of the rights of the juvenile and the nature of the alleged offense.
 
 
 26
 At approximately 1:00 a.m. on April 27, 1991, Navajo Criminal Investigator Franklin Tsosie responded to a report that several individuals had been stabbed. After learning that one of the victims had died, Investigator Tsosie immediately contacted Special Agent Stanley Burke of the FBI. At approximately 2:00 a.m., Investigator Tsosie was notified that two suspects had been taken into custody in connection with the crimes. After interviewing some of the witnesses and victims of the stabbings, Investigator Tsosie returned to the scene of the assaults and waited for FBI Agent Burke to arrive. At approximately 4:00 a.m., FBI Agent Burke arrived and immediately took charge of the investigation.
 
 
 27
 Beginning at approximately 5:00 a.m., FBI Agent Burke interrogated Doe at the Chinle Police Station. At the outset of the interrogation, FBI Agent Burke advised Doe that he was conducting an investigation of several stabbings and that one person had died. FBI Agent Burke did not inform Doe that Doe was a suspect in the assaults or the homicide. FBI Agent Burke advised Doe of his Miranda rights by reading from a standard FBI interrogation form. FBI Agent Burke neglected to obtain basic information, such as Doe's age, education, or date of birth, prior to the interrogation. As a result of this neglect, Doe was not advised that he could have a parent or guardian present during the interrogation if he wished. At around 5:10 a.m., despite the hour, the fact that Doe had been drinking, and Doe's obvious fatigue, FBI Agent Burke began the interrogation. Investigator Tsosie observed the interrogation, but he did not participate.
 
 
 28
 The District Court noted that the above actions by federal and tribal authorities accorded with their "traditional approach" of close cooperation in homicide cases arising on Indian reservations. To allow law enforcement officials to skirt the protections of § 5033 through this cooperative approach would undercut the congressional goal of providing special protections for juveniles.
 
 
 29
 Once FBI Agent Burke became involved in the investigation, he did exactly what the drafters of § 5033 hoped to prevent. He treated Doe like an adult suspect. He questioned Doe about the crimes under investigation without notifying Doe's parents of Doe's custody. He did not even attempt to ascertain whether Doe was a juvenile. The government suggests that, if FBI Agent Burke was ignorant of Doe's juvenile status, then his failure to notify Doe's parents of Doe's custody did not show deliberate insensitivity to Doe's rights. The agent's failure to even take the preliminary step of attempting to ascertain whether Doe was a juvenile actually demonstrates a complete disregard of the government's obligation to treat juvenile suspects differently. Worse yet, FBI Agent Burke conceded that, had he known Doe was a juvenile, he would have done nothing differently.
 
 
 30
 The Ninth Circuit Court has recognized the fact that "The Federal Juvenile Delinquency Act, 18 U.S.C. §§ 5031-5042, creates a special procedural and substantive enclave for juveniles accused of criminal acts." United States v. Frasquillo-Zomosa, 626 F.2d 99, 101 (9th Cir.), cert. denied, 449 U.S. 987, 101 S.Ct. 405, 66 L.Ed.2d 249 (1980). "Special obligations not applicable in adult criminal proceedings are imposed on the arresting officer, [by] § 5033...." Id. at 101.
 
 
 31
 In United States v. Indian Boy X, 565 F.2d 585 (9th Cir.1977), cert. denied, 439 U.S. 841, 99 S.Ct. 131, 58 L.Ed.2d 139 (1978), the Ninth Circuit Court emphasized the presence of the boy's parents and their understanding of his rights under Miranda in evaluating compliance with § 5033 in obtaining a confession from the boy. It is important to note that the boy there had not been federally charged when the FBI was questioning him. While there was much discussion about the timing of taking the boy before a magistrate as required by § 5033 in Indian Boy X, the opinion takes for granted the need for the adherence to the parental notification portion of § 5033 prior to questioning by federal officers.
 
 
 32
 "We are of the opinion that there was a valid Miranda waiver by the boy and his father at the F.B.I. office. It is undisputed that at the time of the rendition of Miranda rights and the waivers, the boy's parents were present. The evidence is conclusive that they understood their rights. The examining officers were, we feel, scrupulously fair and deliberate in ascertaining that both "X" and his parents understood his rights under Miranda."
 
 
 33
 Id. at 591-92 (footnote omitted).
 
 
 34
 One of Congress' goals in enacting the Juvenile Justice and Delinquency Prevention Act of 1974 (the "Act"), Pub.L. 93-415, 88 Stat. 1135, was to provide procedural protections for juveniles. The Senate Report on the Act expressed a desire to "guarantee certain basic procedural and constitutional protections to juveniles under Federal jurisdiction." S.Rep. No. 1011, 93d Cong., 2d Sess., reprinted in 1974 U.S.C.C.A.N. 5283, 5312. In § 5033, Congress addressed the special vulnerability of juvenile suspects noted in these decisions by requiring that juveniles' parents be notified when they are taken into custody.
 
 
 35
 The Ninth Circuit Court in Indian Boy X did not allow its analysis of the voluntariness of his confession to turn on whether the boy had been arrested on a federal charge prior to his questioning by the FBI agents. The voluntariness of his confession was analyzed in the context of due process. Recognition of the difference between a juvenile and an adult in this analysis is implicit in the provisions of § 5033.
 
 
 36
 Simply stated, the question is: did the Doe juvenile voluntarily waive his right not to incriminate himself? The judge below analyzed the record before him and concluded the juvenile had not voluntarily waived his rights. Interrogation of an intoxicated juvenile, arrested in the middle of the night, and questioned in the same manner as an adult, with no thought given to his ability to withstand the pressures of interrogation, did not amount to due process for the juvenile here.
 
 
 37
 Congress enacted the parental notification provisions of § 5033 as part of the Juvenile Justice and Delinquency Prevention Act of 1974 (the "Act"), Pub.L. 93-415, 88 Stat. 1135. Congress passed the Act against the backdrop of Supreme Court decisions recognizing juveniles' decreased ability to withstand the pressures of interrogation. The Act sought to fulfill the mandate of In re Gault, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967). Gault stated that "the greatest care must be taken to assure that the admission [of a juvenile] was voluntary, in the sense not only that it was not coerced or suggested, but also that it was not the product of ignorance of rights or of adolescent fantasy, fright or despair." Id. at 55, 87 S.Ct. at 1458.
 
 
 38
 Other Supreme Court cases have recognized the pressure a juvenile alone faces when he is not given an opportunity for consultation with his parents. In Gallegos v. Colorado, 370 U.S. 49, 82 S.Ct. 1209, 8 L.Ed.2d 325 (1962), the court found the confession of a 14-year old boy held in isolation from his parents for five days to be involuntary. The court stated that the suspect could not "be compared with an adult in full possession of his senses and knowledgeable of the consequences of his admissions." Id. at 54, 82 S.Ct. at 1212-13.
 
 
 39
 The District Court in this case articulated a rationale similar to the Supreme Court in Haley v. Ohio, 332 U.S. 596, 68 S.Ct. 302, 92 L.Ed. 224 (1948). The Haley court reversed a conviction of a 15-year old boy who confessed after five hours of questioning by police without parents or counsel present. The court stated that "we cannot believe that a lad of tender years is a match for the police in such a contest. He needs counsel and support if he is not to become the victim first of fear, then of panic. He needs someone on whom to lean lest the overpowering presence of the law, as he knows it, may not crush him." Id. at 599-600, 68 S.Ct. at 304.
 
 
 40
 The District Court in the case before us noted that if Doe's parents had been notified, "the juvenile would also have the wisdom of the parents, as well as his own wisdom, in determining whether or not to waive his right to an attorney and to proceed with the examination."
 
 II
 
 41
 The collaboration between federal and tribal authorities in this case requires scrutiny. The majority concludes that the protections afforded by § 5033 do not apply because Doe was interrogated while formally in tribal custody, rather than federal custody. The majority fails to address Doe's argument that his statements were obtained in violation of Navajo tribal law. The Navajo Children Code in § 1107 provides:
 
 
 42
 § 1107. Basic Rights
 
 
 43
 A. A child alleged to be a delinquent child or a child in need of supervision shall, from the time of being taken into custody, be accorded and advised of the privilege against self-incrimination and from the time of detention in a detention facility shall not be questioned except to determine identity and to determine the name of the child's parents or legal custodian.
 
 
 44
 Navajo Trib.Code tit. 9, § 1107 A.
 
 
 45
 This provision reveals that Navajo law, like § 5033, recognizes the special status of juveniles and seeks to provide the juvenile suspect with parental support to assist in dealing with the pressures of police interrogation.
 
 
 46
 The government relies on United States v. Chavez-Vernaza, 844 F.2d 1368, 1372 (9th Cir.1987), to argue that a violation of Navajo tribal law cannot preclude the admission of Doe's statements in federal court. In Chavez-Vernaza, the Ninth Circuit held that evidence obtained in violation of state law is admissible in federal court, so long as it was obtained in compliance with federal law. Id. at 1374. I believe that Doe's statements were obtained in violation of both tribal and federal law. Accordingly, I would hold that Chavez-Vernaza does not apply.
 
 
 47
 Acceptance of the government's position regarding violations of Navajo law permits the traditional close cooperation between federal and tribal authorities in cases of this nature to circumvent both federal and tribal law. Because Doe was formally in tribal custody on tribal charges, the government avoids the obligation to comply with the parental notification provisions of 18 U.S.C. § 5033. By prosecuting Doe in federal court, the government avoids the requirements of Navajo tribal law that normally accompany tribal custody. I do not believe that law enforcement authorities should be able to so easily circumvent the special protections enacted for juvenile suspects.
 
 III
 
 48
 I do not believe that United States v. Alvarez-Sanchez, 511 U.S. 350, 114 S.Ct. 1599, 128 L.Ed.2d 319 (1994) requires reversal of the District Court. In Alvarez-Sanchez, the Supreme Court interpreted 18 U.S.C. § 3501(c), which provides that, in any federal criminal prosecution, "a confession made ... by a person who is a defendant therein, while such person was under arrest or other detention in the custody of any law-enforcement officer or law-enforcement agency, shall not be inadmissible solely because of delay in bringing such person before a magistrate ... if such confession was made or given by such person within six hours immediately following his arrest or other detention...." 18 U.S.C. § 3501(c). The Court held that only an arrest on federal charges could trigger § 3501(c) and that a suspect questioned by federal agents while in custody on state charges was outside the protections of the statute. Alvarez-Sanchez, 511 U.S. at 358-59, 114 S.Ct. at 1604.
 
 
 49
 I do not believe that Alvarez-Sanchez compels the conclusion that only a federal arrest on federal charges can trigger the protections of § 5033. Sections 3501(c) and 5033 address distinct problems, and their different focuses should be taken into account in interpreting their respective scopes. Section 3501(c) addresses the situation in which a suspect confesses after being kept in prolonged custody without judicial review of the propriety of that custody. Because custody is the central issue addressed by § 3501(c), a logical trigger for its protections is the basis for a suspect's custody.
 
 
 50
 The protections provided by § 5033, by contrast, focus not on the basis for a juvenile suspect's custody but on the special status and vulnerability of juvenile offenders. An interpretation of § 5033 that focuses narrowly on the formal basis for the juvenile's custody ignores this purpose and the statutory goal of providing procedural protections for juveniles. When federal law enforcement officers ignore the parental notification requirement of § 5033, their conduct contravenes the central purpose of the statute, regardless of the formal basis for the suspect's custody.
 
 
 51
 Supreme Court precedent suggests an alternative interpretation of the scope of § 5033. The Court has held that the applicability of at least some procedural protections depends on the objective circumstances surrounding a suspect's interrogation. In Stansbury v. California, 511 U.S. 318, 320-24, 114 S.Ct. 1526, 1528-29, 128 L.Ed.2d 293 (1994), the Supreme Court held that the obligation to administer Miranda warnings depends on the objective circumstances surrounding a suspect's questioning, rather than the subjective intentions of law enforcement officials. In Stansbury, the Court held that Miranda warnings must be administered when a suspect is " 'taken into custody or otherwise deprived of his freedom of action in any significant way.' " Id. at 322, 114 S.Ct. at 1528 (quoting Miranda v. Arizona, 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694 (1966)). Whether a suspect is in "custody" depends "on the objective circumstances of the interrogation, not on the subjective views harbored by either the interrogating officers or the person being questioned." Id. at 323, 114 S.Ct. at 1529.
 
 
 52
 The objective circumstances surrounding Doe's interrogation support the applicability of § 5033's protections. To hold that § 5033 does not apply here, where tribal and federal authorities closely cooperated in their investigation of Doe, where a federal agent conducted the interrogation, and where the federal agent simply treated Doe like an adult suspect, would greatly weaken the protection afforded by § 5033.
 
 
 53
 I would affirm the District Court's suppression order.
 
 
 
 *
 The Honorable Helen Gillmor, United States District Judge for the District of Hawaii, sitting by designation
 
 
 *
 Honorable Helen Gillmor, District Judge for the District of Hawaii, sitting by designation